People v Thorpe (2023 NY Slip Op 03981)

People v Thorpe

2023 NY Slip Op 03981

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, MONTOUR, AND OGDEN, JJ.

119 KA 21-00198

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SHAWN M. THORPE, DEFENDANT-APPELLANT. 

KEEM APPEALS, PLLC, SYRACUSE (BRADLEY E. KEEM OF COUNSEL), FOR DEFENDANT-APPELLANT.
GREGORY S. OAKES, DISTRICT ATTORNEY, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Oswego County Court (Donald E. Todd, J.), rendered March 13, 2020. The judgment convicted defendant, upon a jury verdict, of aggravated family offense, aggravated harassment in the second degree, burglary in the third degree, grand larceny in the fourth degree and grand larceny in the third degree. 
It is hereby ORDERED that the judgment so appealed from is modified as a matter of discretion in the interest of justice and on the law by reversing those parts convicting defendant of aggravated family offense and aggravated harassment in the second degree and dismissing counts one and two of the indictment, and as modified the judgment is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of aggravated family offense (Penal Law
§ 240.75), aggravated harassment in the second degree (§ 240.30 [4]), burglary in the third degree (§ 140.20), grand larceny in the fourth degree (§ 155.30 [8]), and grand larceny in the third degree (§ 155.35 [1]).
Defendant contends that County Court erred in denying defense counsel's request for an examination of defendant pursuant to CPL 730.30. A court must issue an order of examination "when it is of the opinion that the defendant may be an incapacitated person" (CPL 730.30 [1]). The determination whether to order a competency examination, either sua sponte or upon defense counsel's request, lies within the sound discretion of the court (see People v Morgan, 87 NY2d 878, 879-880 [1995]). Here, we conclude that the court did not abuse its discretion in denying the request (see People v Watson, 45 AD3d 1342, 1344 [4th Dept 2007], lv denied 10 NY3d 818 [2008]; People v Flagg, 17 AD3d 1085, 1085 [4th Dept 2005], lv denied 5 NY3d 852 [2005]). The court had ample opportunity to observe defendant prior to that request, and the record supports its determination that defendant demonstrated an understanding of the proceedings and had the ability to assist in his own defense, and that his refusal to talk to defense counsel on two occasions was indicative of obstinance rather than incompetency (see People v Estruch, 164 AD3d 1632, 1633 [4th Dept 2018], lv denied 32 NY3d 1171 [2019]; People v Yu-Jen Chang, 92 AD3d 1132, 1135 [3d Dept 2012]; see generally People v Tortorici, 92 NY2d 757, 765 [1999], cert denied 528 US 834 [1999]; People v Russell, 74 NY2d 901, 902 [1989]). To the extent defendant contends that the court abused its discretion in failing, sua sponte, to order a competency examination at some point after defense counsel's request, we reject that contention (see Estruch, 164 AD3d at 1633).
Defendant next contends that the court erred in denying defense counsel's requests to be relieved of her assignment. That contention is not preserved for our review inasmuch as defendant did not join in defense counsel's requests (see People v Nwajei, 151 AD3d 1963, 1963 [4th Dept 2017], lv denied 29 NY3d 1131 [2017]; People v Youngblood, 294 AD2d 954, 955 [4th Dept 2002], lv denied 98 NY2d 704 [2002]). In any event, we conclude that the court did [*2]not abuse its discretion in denying the requests inasmuch as the record failed to establish the requisite "good cause for substitution" (People v Sides, 75 NY2d 822, 824 [1990]). Contrary to defendant's assertion, the record does not establish that there was a complete breakdown in communication between defendant and defense counsel (see People v Botting, 8 AD3d 1064, 1065 [4th Dept 2004], lv denied 3 NY3d 671 [2004]; cf. Sides, 75 NY2d at 824-825).
Defendant contends that the court erred in permitting the People to introduce Molineux evidence related to certain prior incidents of domestic violence between him and the victim. We reject that contention. The evidence "provided necessary background information on the nature of the relationship and placed the charged conduct in context" (People v Dorm, 12 NY3d 16, 19 [2009]; see People v Swift, 195 AD3d 1496, 1499 [4th Dept 2021], lv denied 37 NY3d 1030 [2021]; see generally People v Frankline, 27 NY3d 1113, 1115 [2016]), and was relevant to the issue of defendant's motive and intent (see Frankline, 27 NY3d at 1115-1116; Dorm, 12 NY3d at 19). We further conclude that the court did not abuse its discretion in determining that the probative value of the evidence outweighed its potential for prejudice to defendant (see Dorm, 12 NY3d at 19; see generally People v Alvino, 71 NY2d 233, 242 [1987]). The court minimized the potential prejudice to defendant by limiting the evidence to certain prior incidents, rather than the number of incidents concerning which the People sought to introduce evidence (see People v Edmead, 197 AD3d 937, 941 [4th Dept 2021], lv denied 37 NY3d 1096 [2021], reconsideration denied 37 NY3d 1160 [2022]), and by repeatedly providing limiting instructions (see People v Burney, 204 AD3d 1473, 1477 [4th Dept 2022]; Edmead, 197 AD3d at 941).
Defendant's further contention that testimony regarding additional prior bad acts deprived him of a fair trial is, for the most part, unpreserved for our review (see People v Malone, 196 AD3d 1054, 1055 [4th Dept 2021], lv denied 37 NY3d 1028 [2021]; People v Finch, 180 AD3d 1362, 1363 [4th Dept 2020], lv denied 35 NY3d 993 [2020]; see also People v Cirino, 203 AD3d 1661, 1663 [4th Dept 2022], lv denied 38 NY3d 1132 [2022]). To the extent defendant's contention is preserved for our review, we conclude that the court's prompt curative and limiting instructions to the jury alleviated any prejudice (see People v Allen, 78 AD3d 1521, 1521 [4th Dept 2010], lv denied 16 NY3d 827 [2011]).
Defendant failed to preserve for our review his contention that the evidence is legally insufficient to support the conviction of aggravated family offense and aggravated harassment in the second degree because he made only a general motion for a trial order of dismissal (see People v Gray, 86 NY2d 10, 19 [1995]; People v Gibson, 134 AD3d 1512, 1514 [4th Dept 2015], lv denied 27 NY3d 1151 [2016]). We nevertheless exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]), and we agree with defendant that the evidence of physical injury is legally insufficient to support the conviction with respect to those offenses. As relevant to the offenses charged here, a person commits aggravated harassment in the second degree (Penal Law § 240.30 [4]), which was also charged as the specified offense supporting the aggravated family offense count (§ 240.75 [1], [2]), when that person, "[w]ith the intent to harass, annoy, threaten or alarm another person, . . . strikes, shoves, kicks or otherwise subjects [the other] person to physical contact thereby causing physical injury to such [other] person" (§ 240.30 [4]). " 'Physical injury' means impairment of physical condition or substantial pain" (§ 10.00 [9]). Although
" 'substantial pain' cannot be defined precisely, . . . it can be said that it is more than slight or trivial pain. Pain need not, however, be severe or intense to be substantial" (People v Chiddick, 8 NY3d 445, 447 [2007]). "Pain is, of course, a subjective matter," but the Court of Appeals has cautioned that "the Legislature did not intend a wholly subjective criterion to govern" (Matter of Philip A., 49 NY2d 198, 200 [1980]; see People v Bunton, 206 AD3d 1724, 1725 [4th Dept 2022], lv denied 38 NY3d 1149 [2022]). "Factors relevant to an assessment of substantial pain include the nature of the injury, viewed objectively, the victim's subjective description of the injury and [their] pain, whether the victim sought medical treatment, and the motive of the offender" (People v Haynes, 104 AD3d 1142, 1143 [4th Dept 2013], lv denied 22 NY3d 1156 [2014]; see Chiddick, 8 NY3d at 447-448).
Here, the victim testified that defendant bit her on the arm and that, at the time of the incident, the bite was "painful" and her pain level was an 8 out of 10. Although being bitten on the arm may be "an experience that would normally be expected to bring with it more than a little pain" (Chiddick, 8 NY3d at 447; see People v Dowdell, 214 AD3d 1363, 1365 [4th Dept 2023]), the evidence of the injury inflicted here, viewed objectively, established only that the victim [*3]sustained a bruise that hurt for just two or three days at a pain level of 6 out of 10, without any broken skin or bleeding (see Dowdell, 214 AD3d at 1365; People v Lunetta, 38 AD3d 1303, 1304-1305 [4th Dept 2007], lv denied 8 NY3d 987 [2007]; cf. Chiddick, 8 NY3d at 446-448; People v Montgomery, 173 AD3d 627, 628 [1st Dept 2019], lv denied 34 NY3d 935 [2019]). The victim did not seek medical attention (see People v Coleman, 134 AD3d 1555, 1556 [4th Dept 2015], lv denied 27 NY3d 963 [2016]; cf. People v Soto, 170 AD2d 705, 705 [2d Dept 1991], lv denied 77 NY2d 967 [1991]), there was "no testimony that the [victim] took any pain medication for the injury" (Bunton, 206 AD3d at 1725; cf. People v Hill, 164 AD3d 1651, 1652 [4th Dept 2018], lv denied 32 NY3d 1126 [2018]; People v Talbott, 158 AD3d 1053, 1054 [4th Dept 2018], lv denied 31 NY3d 1088 [2018]), and the victim did not testify that she missed any work or that she was unable to perform any activities because of the pain (see Bunton, 206 AD3d at 1725; People v Bruce, 162 AD2d 604, 606 [2d Dept 1990], lv denied 76 NY2d 853 [1990]). The evidence thus failed to establish that the victim suffered substantial pain (see Dowdell, 214 AD3d at 1365-1366). Further, "the record lacks evidentiary support for a conclusion that the physical condition of the victim was impaired because of the injuries sustained in the incident" (People v Rankin, 155 AD2d 977, 977-978 [4th Dept 1989], lv denied 75 NY2d 816 [1990]; cf. People v Moore, 47 AD3d 403, 404 [1st Dept 2008], lv denied 10 NY3d 867 [2008]; People v Maturevitz, 149 AD2d 908, 909 [4th Dept 1989]). Thus, viewing the evidence in the light most favorable to the People (see People v Allen, 36 NY3d 1033, 1034 [2021]), we conclude that it is legally insufficient to establish that the victim sustained physical injury (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). We therefore modify the judgment by reversing those parts convicting defendant of aggravated family offense and aggravated harassment in the second degree and dismissing counts one and two of the indictment.
Defendant also failed to preserve for our review his challenges to the legal sufficiency of the evidence with respect to the remaining counts (see Gray, 86 NY2d at 19). Contrary to his further contention, viewing the evidence in light of the elements of burglary in the third degree, grand larceny in the fourth degree, and grand larceny in the third degree as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict with respect to those counts of the indictment is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
Defendant further contends that the grand larceny in the fourth degree count should be dismissed because it is an inclusory concurrent count of the grand larceny in the third degree count. We reject that contention. Grand larceny in the fourth degree under subdivision 8 of Penal Law § 155.30 is not a lesser included offense of grand larceny in the third degree under subdivision 1 of section 155.35 " 'because one may steal property, other than a motor vehicle, worth more than $3,000 without concomitantly committing the crime of grand larceny in the fourth degree under Penal Law § 155.30 (8)' " (People v Williams, 295 AD2d 968, 968 [4th Dept 2002], lv denied 98 NY2d 714 [2002]; see People v McClusky, 12 AD3d 1174, 1175 [4th Dept 2004], lv denied 4 NY3d 765 [2005]).
We reject defendant's contention that he was denied effective assistance of counsel. Viewing the evidence, the law, and the circumstances in totality and as of the time of the representation, we conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Contrary to defendant's further contention, we conclude that the sentence is not unduly harsh or severe. Finally, we note that the uniform sentence and commitment form erroneously states that defendant was convicted of grand larceny in the fourth degree under Penal Law
§ 155.30 (4), and it must be amended to correctly reflect that defendant was convicted of that offense under Penal Law § 155.30 (8) (see generally People v Thurston, 208 AD3d 1629, 1630 [4th Dept 2022]).
All concur except Ogden, J., who dissents in part and votes to reverse in accordance with the following memorandum: I respectfully disagree with the majority's conclusion that County Court did not abuse its discretion in denying defense counsel's request for an examination of defendant pursuant to CPL 730.30 under the circumstances herein. A court must issue an order of examination "when it is of the opinion that the defendant may be an incapacitated person" (CPL 730.30 [1]). Although the determination whether to order a CPL article 730 examination, either sua sponte or upon defense counsel's request, lies within the sound discretion of the court [*4](see People v Morgan, 87 NY2d 878, 879-880 [1995]), the determination should be balanced with the defendant's fundamental right to due process inasmuch as defendants who lack the mental capacity to stand trial and to aid in their defense cannot be convicted without violating due process (see Pate v Robinson, 383 US 375, 378 [1966]). 
In my view, defendant was convicted despite clear indications that a CPL article 730 examination into his mental capacity to stand trial was required. Therefore, although I agree with the majority's determination to reverse those parts of the judgment convicting defendant of aggravated family offense and aggravated harassment in the second degree and to dismiss counts one and two of the indictment, I dissent in part and would also reverse the remaining parts of the judgment and remit the matter to County Court for further proceedings before a different judge on the remaining counts of the indictment, including an examination pursuant to CPL article 730 to determine whether defendant is fit to proceed (see People v Peterson, 40 NY2d 1014, 1015 [1976]; People v Armlin, 37 NY2d 167, 173 [1975]; People v Byron, 175 AD2d 728, 729 [1st Dept 1991], lv denied 79 NY2d 854 [1992]).
A court is under no obligation to issue an order of examination pursuant to CPL 730.30 (1) unless it has "reasonable ground . . . to believe that the defendant was an incapacitated person" (Armlin, 37 NY2d at 168). "The key inquiry in determining whether . . . criminal defendant[s are] fit for trial is 'whether [they] ha[ve] sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding—and whether [they] ha[ve] a rational as well as factual understanding of the proceedings against [them]' " (People v Phillips, 16 NY3d 510, 516 [2011], quoting Dusky v United States, 362 US 402, 402 [1960]; see generally CPL 730.10 [1]; Morgan, 87 NY2d at 880). In determining whether a trial court should invoke the procedures of CPL article 730 and direct an examination on defendant's competency, the focus is on what the trial court did in light of what it knew or should have known of the defendant at any time before final judgment (see Armlin, 37 NY2d at 171; People v Harris, 109 AD2d 351, 355 [2d Dept 1985], lv denied 66 NY2d 919 [1985]).
Based on those well-settled authorities and the record of this case, I conclude that the court abused its discretion in failing to order an examination of defendant upon the request of defense counsel or, later, sua sponte.
Approximately one month prior to trial, defendant's newly appointed counsel asked the court, via email, for an order of examination of her client pursuant to CPL article 730. At an appearance on November 25, 2019, defense counsel explained, in support of her request, that defendant "refused to speak one word" to her on two separate occasions during her jail visits to defendant. The court denied the request, explaining that defendant's behavior did not demonstrate incompetence but instead petulance and obstinance. Defense counsel further argued that she could not effectively represent defendant under those circumstances. The court ultimately responded by asserting that "the choice to communicate or not to communicate with you is his. I'm not going to relieve you. I understand that it may make your job more difficult, but we're on the eve of trial, so as I said . . . , you can either cooperate with your attorney or not, but it's not going to be a basis for delaying this trial." The jury trial commenced on December 9, 2019, less than one month later.
The record further establishes that defendant had filed a complaint against his prior defense counsel, prompting the court to reluctantly grant defendant's request for new counsel, made several bizarre allegations concerning the court and the court's relation to the case, told the court that he would rather go to prison for life than for two to four years, exhibited bizarre behavior as the case progressed and discharged his newly assigned defense counsel at the onset of the jury trial, prompting the court to permit defendant to proceed pro se with counsel serving as stand by counsel. Defendant also informed the court, at the onset of the trial and prior to opening statements, that he previously received mental health treatment and was currently prescribed Effexor, Remeron, Vistaril and Gabapentin for mental health treatment.
During the trial, defendant repeatedly changed his mind about defense counsel's role and representation. At one point defendant allowed defense counsel to resume representing him and at another point he did not want counsel's assistance. This prompted defense counsel to, again, ask the court to replace her based on the inability to communicate effectively with defendant. Defense counsel's request was denied.
Although the court characterized defendant as "petulant and obstinate," and the majority also characterizes defendant's conduct as "obstinance," in my view, the behavior by defendant illustrates that he may have been an incapacitated person (see Peterson, 40 NY2d at 1015). Defendant's history of mental health issues, defense counsel's statements describing her experiences with defendant, and defendant's bizarre claims and preferences, when objectively considered, should have reasonably raised a doubt about defendant's competency, i.e., defendant's ability to rationally aid his attorney in his defense, thereby prompting the court to order a CPL article 730 examination.
"[A] criminal defendant may not be prosecuted unless competent to stand trial" (People v Stone, 22 NY3d 520, 524 [2014]). We have a robust process under article 730 of the Criminal Procedure Law, which "prescribes the procedures that trial courts of this State must adhere to in determining a defendant's legal competency for trial" (Phillips, 16 NY3d at 516). The court's refusal to make use of that process and instead summarily determine that defendant was "obstinate" without further review threatened the protections guaranteed under the Fourteenth Amendment of the United States Constitution as well as the New York State Constitution.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court